Crew, J.
In the petition filed by relator in this
case in the circuit court of Franklin county, it is alleged that the defendant, The Union Terminal Railroad Company, is a corporation formed under the laws of the state of Ohio and doing business in such state, with its principal office and place of business located in the city of Cincinnati, Hamilton county, Ohio. That in its application made to and filed with the secretary of state of the state of Ohio for its articles of incorporation, said corporation by its incorporators represented to the secretary of state that it was formed:
“For the purpose of constructing or acquiring, maintaining, .operating and owning a single or double track railroad, with all the necessary branches, side tracks, turnouts, depots, round houses, machine shops, water tanks, telegraph lines and other necessary appliances within the corporate limits of the city of Cincinnati, Hamilton county, Ohio, for the transportation of freight, passenger and express *462 cars, and as a common carrier of freights of all kinds by means of the transfer of cars between all the various lines of railroads, now or hereafter entering and doing business' in the city of Cincinnati; also for the purpose of receiving from, delivering to, and forwarding over, said various lines of railroads shipments of freight for the public in general’ and to provide the yards and depots necessary for the storage, accommodation, and transfer of freight, express and passenger traffic, to, from and between all said railroads; the said railroad shall be constructed and operated between the points, to-wit, commencing in the western part- of the said city of Cincinnati, at or near the intersection of Jeptha and Budd streets, if said streets were extended to meet, and extending in an easterly and northerly direction throughout such streets, highways, and private lands, in the central portion of said city of Cincinnati, as may be the most eligible and suitable for a proper and convenient connection between the various - railroads now or hereáfter entering and doing business in the said city of Cincinnati, having reference to grades, the public use of streets, and the location of the shippers patronizing said railroads and this corporation, to a point in the eastern part of said city of Cincinnati, at or near the intersection of Court street and Eggleston avenue.”
That the secretary of state thereupon, on the first day of July, 1904, issued to the said defendant a certificate of articles of incorporation and therein recited the purposes above set forth as those for which the said defendant corporation was formed; and the same was duly recorded in the office of the secretary of state, as by the statutes of. Ohio required. It is further averred that said Terminal Com *463 pany by virtue of the powers conferred upon it by its said articles of incorporation claims to have and possess, and is about to exercise, the rights, privileges and powers conferred upon railroad companies created and organized under the laws of Ohio. In the answer of the Union.Terminal Railroad Company these several averments are expressly admitted, so that the sole issue presented by the pleadings in this case, and the only question now before this court for determination is, Is the defendant company, organized for purposes as shown and stated in its articles of incorporation, a railroad company, and as such entitled to have and exercise all the rights, privileges and powers conferred upon railroad companies by Part Second, Title II, Chapter 2, of the Revised Statutes of Ohio ? Considering the purpose of the incorporation of said Company, as set forth in its articles of incorporation, it must, we think, be conceded, that the answer to this question must be found in the construction proper to be given to the language of section 3270, Revised Statutes, which section is a part of the aforesaid Title II and Chapter 2, and reads as follows: “A railroad company now existing or hereafter created may maintain and operate, or construct, maintain and operate a railroad, with a single or double track, with such side tracks, turnouts, offices, depots, round houses, machine shops, water tanks, telegraph lines, and other necessary appliances as it deems necessary, between the points named in the articles of incorporation, commencing at or within, and extending to or into any city, village, town, or place named as a terminus of its road.” It is the contention of counsel on behalf of relator in this case, that because of the provisions of this section no corporation formed *464 under and in pursuance of the railroad incorporation laws of this state is, or can he, authorized to construct, maintain and operate a railroad having both of its termini within the limits of the same city, village or town. This contention is rested upon the language found in the concluding paragraph of said section 3270, which authorizes a railroad company to construct, maintain, and operate a railroad between the points named in the articles of incorporation, “commencing at or within, and extending to or into any city, village, town, or place named as a terminus of its road.” It is insisted here that the meaning of the language last above quoted is, that each terminus must be at or within a different city, village, town or place, and that the requirement is that the road shall commence at or within one city, village, town or place, and extend to or into another city, village, town or place, and it is said in argument that: “it was the intention always of the legislature to have cities,” villages, towns and inhabited places used as termini, and even places of transition, but never the intention of the legislature that the same town, city, village or inhabited place should contain within itself the two termini.” Without attempting to follow counsel in detail through their review of the historical development of the Ohio railroad laws governing the subject matter now under consideration and leading up to the enactment of section 3270, in its present form, we think it enough to say that after a careful consideration of the same, we find nothing in the facts presented or the authorities cited that would seem to us to either require or warrant the restrictive interpretation or construction of this section for which counsel for plaintiff in error contend. This *465 section in terms expressly authorizes the construction of a road by a railroad company “between the points named in the articles of incorporation. ’ ’ The points so named constitute the termini, and within the terms of the statute, may be at or within any city, village, town, or place. While this section, by the language employed, clearly evinces a legislative intent to require that definite termini be named in the articles of incorporation, that the termini named shall be points, and that these points shall be at or within a city, village, town, or place certainly designated, yet there is, in the language employed, no suggestion of any legislative design or purpose that the points named as the termini may not be within the same city, village, town, or place; except it be found in the phrase “commencing -at or within and extending to or into any city, village, town, or place named as a terminus of its road.” This language may not, we think, properly be construed as imposing a limitation or restriction upon the railroad company .in the matter of the selection and designation of the termini of its road; such is not its office or necessary effect, nor was it so used and intended by the legislature. But rather it was intended thereby only to give expression to the legislative intent, and to require, that the railroad to be constructed under this section should not only be constructed, or lie, between the points named in the articles of incorporation, but that it should actually commence at one, and extend to the other of the designated termini. This section' of the statute, prior to the commencement of the present proceeding has not so far as we are advised received a judicial construction in this state. W,e find, however, that in other states similar statutes, with like provisions, have been reviewed and have *466 received construction by the courts of last resort. In New Jersey, a statute of that state containing almost the identical language found in section 3270 of the Ohio statutes, was construed and interpreted by the court of chancery of that state in the case of the Long Branch Commissioners v. The West End Railroad Company, 29 N. J. Eq., 566. The statute under consideration in that case, so far as its provisions are pertinent here, was as follows:
“It shall be lawful for every corporation formed under this act * * * to construct, maintain and operate a railroad with a single or double track, with such side tracks, turnouts, offices and depots, as they may deem necessary between the points named in the articles of association, commencing at or within and extending to or into any town, city or village named as the place of the termini of such road.” * * #
We quote the following from the opinion of the vice chancellor:
“The defendants are a corporation formed under the general railroad law. They acquired corporate powers for the purpose of constructing a railroad from a point in the line of the Long Branch & Sea Shore Railroad to a point in the line of the New York & Long Branch Railroad, and thus connect the two roads. The proposed road is about two miles long and both its terminal points are within the territorial limits of the town of Long Branch. The complainants seek to enjoin the construction of the proposed road, first, because, they say, no corporation formed under the general railroad law is authorized to construct a road where both of its termini are within the limits of the same town, city or village; and, second, because this road as now located, will *467 occupy certain public highways to an unnecessary or unreasonable extent. ’ ’
Considering the first ground of objection, the court says, on page 567:
“The language which furnishes the basis of the first ground taken by the complainants, is found in the eleventh section (Rev., p. 927). That section authorizes a corporation formed under the act to construct a railroad between the points named in its articles of association, commencing at or within, and extending to or into, any town, city or village named as the places of the termini of such road. It is contended that these words plainly mean that each-terminus must be at or within a different town, city or village; in other words, that the road must commence at or within one town, city or village and extend to or into another town, city or village. The direction is in the disjunctive. The road may commence either at or within, and extend either to or into a town, city or village. A road commencing at a point in the western boundary of the city of Newark and extending to the city hall would be located strictly in accordance with the letter of this act. It would commence at a city and extend into a city. It is true, it would not.commence at one city and extend to or into another, but the law does not say that it shall, but simply that it shall commence at and extend into a city. I am unable to see a plain design in these words to restrict the termini of a road constructed under this act to two different towns, cities or villages.”
The same statute was again construed in The National Bocks Railway Go. et al. v. The Central Railroad Company of New Jersey, 32 N. J. Eq., 755.
*468 In the opinion in this latter case Dixon, J., at page 766, says:
“Another objection raised is, that the general railroad law does not authorize the construction of a railroad which shall lie wholly within one city, as will the railway now enjoined. But upon this point we concur in the opposite views expressed, by the learned vice chancellor in Long Branch Commissioners v. West End Railroad, Co., 2 Stew. Eq., 566. If we remember the evil that called forth the statute, which was the incessant application to the legislature for special charters for all sorts of railroads, it will plainly appear to be our duty to construe it liberally with respect to the classes of railroads which may be built under it; and, as the vice chancellor shows, only a constrained and partial interpretation could lead to the conclusion of the complainants. We find no reason in the law to believe that the legislature had in mind to exclude this class of railways. ’ ’
We fully concur in the interpretation adopted by the court in the above cases, of the statute there under review. And we are of opinion that a like interpretation is required and should be given to section 3270, of the Ohio statute. In the present ease the articles of incorporation of the defendant in error, The Union Terminal Company, sufficiently show, we think, that it was incorporated for a public purpose, viz.:
For the transportation of freight, passenger and express cars, and as a common carrier of freights of all kinds by means of the transfer of cars between all the various lines of railroads, now or hereafter entering and doing business in the city of Cincinnati; also for the purpose of receiving from, delivering to, and forwarding over, said various lines of railroads ship *469 ments of freight for the public in general, and to provide the yards and depots necessary for the storage* accommodation, and transfer of freight, express and passenger traffic, to, from and between all said railroads.
And under and by virtue of its incorporation it became and is a railroad company, and as such is invested with the rights, privileges, and powers conferred upon railroad companies incorporated under the statutes of Ohio. The judgment of the circuit court in this case being in conformity with the views here expressed is
- Affirmed.
Davis, C. J., Shauck, Price, Summers and Spear, JJ., concur.